# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARYSOL BARRAGAN,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　Defendants. | Case No. 1:21-cv-0895-JLT-BAM<br><br>ORDER FOR *DAUBERT* HEARING REGARDING TREATING MEDICAL PROVIDERS WHO SUBMITTED DECLARATIONS IN SUPPORT OF OPPOSITION TO SUMMARY ADJUDICATION<br><br>(Doc. 46) |

Marysol Barragan brings this personal injury action against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2674, alleging she sustained injuries after being involved in a low-speed accident with a U.S. Army vehicle in a shopping center parking lot on August 23, 2017. (Doc. 1.) Before the Court for decision is the government's motion for summary adjudication of some of Plaintiff's damages claims. (Doc. 46.) Primarily, the government argues Plaintiff cannot carry her burden to establish entitlement to damages for past medical care (with the exception of some initial chiropractic care that concluded in September 2017), any future medical care, or any non-economic damages (e.g., pain and suffering). (Doc. 46-1 at 18-23.) The government contends that Plaintiff cannot establish a prima facie case of causation to support these damages claims given that (a) she was involved in a subsequent, more serious motor vehicle accident and (b) has not disclosed ay retained experts regarding causation. (*Id*.) The government also argues that Plaintiff has not provided any evidence to support a claim for past lost wages or

1

property damage. (*Id.* at 20–21.) Plaintiff concedes that she has no basis to demand property damage or lost earnings as damages but opposes the other aspects of the government's motion. (Doc. 49.) Attached to Plaintiff's opposition are three declarations from treating medical providers and excerpts from Plaintiff's medical records produced in discovery. (Docs. 52–53.) Defendant filed a reply (Doc. 54), and the matter was taken under submission on the papers (Doc. 47).

The remaining disputes turn on the content and admissibility of the treating physicians' declarations, which are the only evidence Plaintiff offers in opposition to summary adjudication to demonstrate that the August 2017 accident caused the disputed damages. (*See* Doc. 49.) It is undisputed that Plaintiff did not disclose any experts of any kind (Doc. 48 (Plaintiff's Statement of Genuine Issues of Material Fact (PSDF)) #16), though she identified them in her initial disclosures. After denying Plaintiff's request to modify the scheduling order to allow the late-disclosure of the treating doctors as experts, the Court precluded any of Plaintiff's treating physicians from testifying to matters "beyond information learned or acquired, or opinions reached, as a result of the treating relationship." (Doc. 41 at 5 (*quoting Ruiz v. Paradigmworks Grp., Inc.*, No. 16-CV-2993-CAB-BGS, 2020 WL 133905, at *2 (S.D. Cal. Jan. 13, 2020).) Nonetheless, in this Circuit, a "treating physician may be allowed to opine even as to causation if there is sufficient evidence that the opinion was formed during the course of providing treatment, regardless of submission of an expert report." *Hair v. Fed. Exp. Corp.*, No. 11-CV-0209-TOR, 2012 WL 4846999, at *11 (E.D. Wash. Oct. 11, 2012) (citing *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 825–26 (9th Cir. 2011)). Though such evidence is not subject to the requirement of an expert report, opinions regarding causation that require the application of specialized "knowledge, skill, experience, training, or education" as defined by Federal Rule of Evidence 702 are still subject to the Court's gatekeeping functions under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588 (1993). *See Hair*, 2012 WL 4846999, at *12 (analyzing treating physician "course of treatment" causation evidence under *Daubert*); *Scolaro v. Vons Cos., Inc.*, No. 2:17-CV-01979-JAD-VCF, 2019 WL 7284738, at *8 (D. Nev. Dec. 27, 2019) (applying *Daubert* to treating physician's causation testimony even though that physician was not

designated as an expert because even though arguably formed during the course of treatment, the causation opinion required specialized knowledge and was therefore "expert-like"); *see also Medcalf v. Uzzell*, No. CV-20-00997-PHX-ESW, 2021 WL 5370707, at *3 (D. Ariz. Nov. 18, 2021) ("[I]t [is] 'clearly is incorrect' to assert that because a witness is a treating physician, not a specially retained expert, the witness' opinions are not subject to *Daubert*.").

Here, each of the treating physicians applied his or her specialized training and expertise to information purportedly learned during the course of treatment to determine that the August 17, 2017 accident caused Plaintiff's various injuries. For example, Dr. Ali Najafi, MD, a neurosurgeon who treated Plaintiff from March through August 2019, states:

> Ms. Barragan came to my office for treatment related to an automobile accident which occurred on August 23, 2017. As part of my initial evaluation of her, I and my staff performed an extensive personal history from Ms. Barragan and inquired both verbally from her and referred to her written report regarding her injury history and any possible pre-existing issues and/or causative issues related to her complaints of pain upon presentation.
>
> After conducting the personal history and examining Ms. Barragan, I came to the differential diagnosis that the August 23, 2017 motor vehicle accident that she was involved in caused her Cervical stenosis with spondylosis at C5-C6. The opinions were based upon my education, training, experience, and my personal involvement in the care and treatment of this patient.

(Doc. 51 at ¶¶ 3–4.) Similar language was included in the Declarations of Jaime Reyna, DC, who provided chiropractic care to Plaintiff in 2017, (Doc. 52 at ¶¶ 3–4), and Reza Shakeri, DC, who provided chiropractic care to Plaintiff from June 2018 to January 2019, (Doc. 53 at ¶¶ 3–4).

In reply, the government, having seen the treating physician's declarations for the first time in Plaintiff's opposition filing, argues that the declarations go beyond the scope of treatment and do not provide admissible expert opinion evidence. (Doc. 54 at 3-4.) Of note, none of the declarations suggest that the treating physicians knew of or considered Plaintiff's later, arguably more serious, automobile accident.[1] (*See* Docs. 51–53.) This raises a classic *Daubert* question:

---

[1] It is undisputed that at some point after August 23, 2017, Plaintiff was involved in an unrelated motor vehicle accident that occurred on the highway. (PSDF #5.) Plaintiff described the accident as a "hit and run" and explained that the collision caused her vehicle to "sp[i]n out." (*Id*.) Plaintiff indicated that a police report was created after that accident, but she could not recall the date or even the year of the accident. (Doc. 46-1 at 15–16.)

whether the reasoning underlying the physician's opinions that the August 23, 2017 accident caused Plaintiff's injuries are based on sufficient facts or data. Fed. R. Evid. 702(b).[2] Given that Plaintiff's entire causation case rests on these declarations and the fact that the reliability issue was legitimately raised for the first time in reply, the Court concludes that further exploration of the reliability of the treating physician's declarations is required before it can resolve the pending motions.

Accordingly, within 14 days of the date of this order, the parties **SHALL** contact the Courtroom Deputy Clerk to ascertain the Court's availability for a *Daubert* hearing as to the treating physician declarations. The Court is cognizant that the pretrial conference is currently scheduled for January 16, 2024, and the Court Trial for March 19, 2024. The Court's preference is to determine the *Daubert* issues without delay, but it will entertain a reasonable stipulation regarding the case schedule that is designed to allow this case to expeditiously proceed.

IT IS SO ORDERED.

Dated:  **December 2, 2023**

*/s/ Jennifer L. Thurston*
UNITED STATES DISTRICT JUDGE

---

[2] Under Federal Rule of Evidence 702, "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

4